**LIGHTHOUSE CHURCH OF CLOVER-LEAF, David H. Montgomery, Individually, D/B/A Lighthouse Church of Cloverleaf, Cornerstone Christian Academy, and Carzz's Auto Sales, Appellants,**

v.

**TEXAS BANK, Appellee.**

No. C14–93–01074–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 17, 1994.

Rehearing Overruled Dec. 8, 1994.

596 

Benjamin Havard, Beach City, for appellants.

Edwin Lamm, III, Scott T. Citek, Houston, for appellee.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

### OPINION ON MOTION FOR REHEARING

CANNON, Justice.

This suit arose out of a bank's repossession of real and personal property. Our original opinion issued on September 1, 1994. Appellees filed a motion for rehearing which we now overrule. After reconsidering our earlier disposition of this case, however, we withdraw our previous opinion and substitute the following opinion.

Five plaintiffs, the Lighthouse Church of Cloverleaf, a presently defunct corporation, and David H. Montgomery, individually and doing business as three separate entities— Lighthouse Church of Cloverleaf, Cornerstone Christian Academy, and Carzz's Auto Sales—appeal the granting of a summary. judgment by the trial court in favor of Texas Bank.[1] They bring 23 points of error. We affirm in part, reverse in part, and remand.

### I. The Applicable Standard of Review

The standards for reviewing a summary judgment are well established. It is

---

1. For simplicity, we will refer to all plaintiffs below collectively as "Appellants." We shall refer to the Lighthouse Church of Cloverleaf, a Texas Corporation as the "Church." David H. Montgomery shall be referred to by his last name, "Montgomery". The three assumed name businesses shall be referred to collectively as the "Businesses." Texas Bank shall be referred to as the "Bank."

incumbent upon the movant in a summary judgment proceeding to demonstrate, through the motion and its supporting evidence, (1) there is no genuine issue of material fact and (2) he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management, Inc.*, 690 S.W.2d 546, 548–549 (Tex. 1985); *McFadden v. American United Life Ins. Co.*, 658 S.W.2d 147, 148 (Tex.1983). No act by a non-movant can divest the movant of this burden. Even if the non-movant does not file a response and the motion is uncontroverted, the movant still carries the burden of proof. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). Furthermore, proof there are no disputed facts does not automatically entitle the movant to summary judgment. The movant must still show, under those undisputed facts, Texas law directs judgment in his favor.

## II. Facts and Procedural History

The following facts were established by the Bank in its Motion for Summary Judgment. A defunct corporation, the Lighthouse Church of Cloverleaf, entered into an agreement with Texas Bank in July, 1990, to purchase real property. The corporation had been defunct since June 19, 1989, because it failed to pay franchise taxes.

Several documents were signed during the course of the transaction including a deed of trust, a security agreement, and a corporate resolution. A deed was executed conveying the property to the Church. David H. Montgomery took possession of the property on behalf of the Church. He made repairs and improvements to some buildings located on the property, and then operated a church,

day school, and used car business from the property. It appears he operated these as sole proprietorships, although he did not file the required assumed named certificates with the county clerk. Also, the sole proprietorship church was operated under the same name as the defunct corporation.

The Church was in default on its payments to the Bank from October, 1991, through February, 1992. The Bank entered the property on January 16, 1992, and repossessed collateral. This included the real estate itself. The result is best termed as "self-help repossession" of real estate. The Bank encountered no one when it entered and secured the property against Appellants' return. The Bank conducted a non-judicial foreclosure sale in March, 1992, two months after "repossession". Appellants were never permitted to re-enter the property.

The manner in which the Bank took possession of the premises is hotly debated. The Bank alleges it took lawful possession by peaceful means.[2] Appellants assert the Bank went onto the property, locked the main gates, posted an armed guard, and changed locks on the buildings, all of which denied them access to the premises. As will be seen, however, the manner in which the Bank took possession is irrelevant.

## III. Appellants' Suit and Their Points of Error

Appellants sued and alleged several related causes of action. First, Appellants contended the Bank trespassed on real property and excluded them from that property which resulted in damages to the Church and businesses.[3] Second, they alleged the Bank

---

**2.** The affidavit of the Bank's representative, Edith Jones, avers the Bank "took lawful possession of the collateral by peaceful means allowed under its Security Agreement with THE LIGHTHOUSE CHURCH OF CLOVERLEAF and its Deed of Trust related to the underlying real property." The Bank argues this establishes that its entry was peaceful, within the law, and shows they were entitled to summary judgment. In our previous opinion, we determined this statement to be nothing more than a legal conclusion. Legal conclusions are insufficient as a matter of law to support summary judgment. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991). Legal conclusions in affidavits are substantive defects

and need not be objected to in the trial court to be raised for the first time on appeal. *Ramirez v. Transcontinental Ins. Co.*, 881 S.W.2d 818, 829 (Tex.App.—Houston [14th Dist.] 1994, n.w.h.).

**3.** The gist of an action of trespass to realty is the injury to the right of possession. *Pentagon Enter. v. Southwestern Bell*, 540 S.W.2d 477, 478 (Tex. Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.); *see also Cargal v. Cargal*, 750 S.W.2d 382, 385 (Tex.App.—Fort Worth 1988, no writ) (brother of deceased man liable for trespass damages for excluding widow from home by telling her he was locking doors, terminating utilities, and that

converted the real property and personal property located on the real property.[4] Finally, they alleged wrongful foreclosure. These pleadings defined the scope of the issues to be litigated by the district court.

In their first six points, Appellants argue the district court erred in granting summary judgment on the legal premise they did not own the property and had no right of possession. Points of error seven through nine challenge the district court's judgment that Appellants were not in actual possession of the property, while points twenty through twenty-two challenge the district court's judgment that the Bank had the right to repossess the property under the security agreement and deed of trust. Points of error ten through nineteen attack the district court's judgment that Appellants had no standing to maintain their cause of action. Point twenty-three is a general attack on the summary judgment on the ground there were disputed issues of material fact and the Bank was not entitled to judgment as a matter of law.

Texas Bank replies that Appellants failed to properly perfect error for purposes of appeal. The Bank argues Appellants' brief asserts numerous grounds for reversal which were not pointed out to the trial court by written motion, answer or other response and should not be considered by this court on appeal. The Bank relied on this Court's decision in *Atlantic Richfield Co. v. Exxon Corp.,* 663 S.W.2d 858, 863 (Tex.App.—Houston [14th Dist.] 1983), *rev'd on other grounds,* 678 S.W.2d 944 (Tex.1984). In *Atlantic Richfield,* we held TEX.R.CIV.P. 166–A(c) was intended to require parties to present the legal and factual bases for their case before rendition of summary judgment. *Id.* at 863. Issues not expressly presented to the trial court are not to be considered by this Court on appeal. *Id.*

Our holding in *Atlantic Richfield* was limited to the presentation of new theories of recovery or defense. It was never intended to contravene the general rule laid out in *City of Houston v. Clear Creek Basin Auth.,* that a non-movant needs no answer or response to a motion for summary judgment to contend on appeal the grounds expressly presented to the trial court by the movant's motion are insufficient as a matter of law to support the summary judgment. 589 S.W.2d at 678; *see also Texas State Investors, Inc. v. Kent Elec. Co.,* 620 S.W.2d 841, 843 (Tex. App.—Houston [14th Dist.] 1981, no writ). The majority of Appellants' points on appeal are of the type contemplated in *Clear Creek.* Those few, however, which raise a new legal defense or theory of recovery will not be considered.

### IV. Analysis

In its Motion for Summary Judgment, the Bank contended it was entitled to judgment as a matter of law. It asserted several arguments which it raises again on appeal to support its position. The Bank's arguments can be divided into two broad categories: attacks on the conveyance or transaction, and attacks on Appellants' standing to bring suit. We will address the standing issue first, for, if the Bank's assertions are correct, it was indeed entitled to judgment as a matter of law.

### A. Attack on Appellants' Standing to Maintain Suit

In its Motion for Summary Judgment, the Bank contended Montgomery and the Businesses had no standing to sue because there was no contractual relationship between them and the Bank; the only "contractual" relationship was between the Bank and a defunct corporation. The Bank also pointed out no assumed name certificates were filed with the county clerk, and this precluded the Businesses maintaining a suit. Finally, the

---

title automatically transferred to him under deed of trust).

4. "Conversion" is the wrongful exercise of dominion and control over another's personal property to the exclusion of or inconsistent with the rights of the owner. *Adam v. Harris,* 564 S.W.2d 152, 155 (Tex.Civ.App.—Houston [14th Dist.]

1978, writ ref'd n.r.e.). We note, however, Texas does not recognize a cause of action for the conversion of realty. *See Cage Bros. v. Whiteman,* 139 Tex. 522, 163 S.W.2d 638, 641 (1942). Therefore, we consider only Appellants' conversion of personalty claims.

Bank argued the Church was a defunct corporation and thus, could not maintain suit in a state court.

### 1. Standing to Bring Tort Claims

The causes of action for trespass, conversion, and wrongful foreclosure sound in tort. Consequently, a contractual relationship between the parties was not necessary in order for Montgomery and the Businesses to maintain a suit on any of these three theories. The Bank did not prove it was entitled to summary judgment as a matter of law on this ground.

### 2. Standing of the Church and Businesses

The Business and Commerce Code requires each party doing business under an assumed name to file an assumed named certificate in the county where he is doing business. TEX.BUS. & COM.CODE ANN. § 36.10(a) (Vernon 1987). The Code provides that if a party fails to file an assumed name certificate he cannot maintain a suit in a Texas court under that name. TEX.BUS. & COM.CODE ANN. § 36.25 (Vernon 1987).

Texas statutory law bars a corporation which has forfeited its corporate charter from maintaining a suit in state court. TEX. TAX CODE ANN. § 171.252(1) (Vernon Supp. 1994). However, sections 171.312 and 171.313 provide a means by which a corporation can set aside a forfeiture by the Secretary of State. In the case at bar, the Church would have to file certain reports, pay its past due taxes, and follow the procedure outlined in section 171.313(a). Once the Secretary of State determines the taxes have indeed been paid, he must set aside the forfeiture and reinstate the corporation. TEX.TAX CODE ANN. § 171.313(b) (Vernon 1982). Thus, it appears a corporation which has forfeited it corporate charter for failing to pay franchise taxes is never truly dead, but may be resurrected by paying the delinquent taxes. See McGown v. Kittel, 480 S.W.2d 47, 49 (Tex.Civ.App.—Fort Worth 1972, writ ref'd n.r.e.) (corporate charter forfeited in 1965 for non-payment of franchise taxes reinstated in 1971).

A plaintiff's right to bring suit in the capacity in which he sues is properly raised by a plea in abatement, or it is waived. *Continental Contractors, Inc. v. Thorup*, 578 S.W.2d 864, 866 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). Resort to a motion for dismissal should not be granted until the cause of action has been abated, the plaintiff has been given an opportunity to cure the defect, and has failed to do so. *See Mercure Co., N.V. v. Rowland*, 715 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). The Bank did not file a motion to abate and therefore it waived the defect. *See Continental Contractors*, 578 S.W.2d at 866. Summary judgment was not a proper vehicle for disposing of the Church's or Businesses' claims. The Bank did not carry its burden of demonstrating it was entitled to judgment as a matter of law on the theory the Church and Businesses did not have standing to maintain suit for trespass and conversion.

### B. Attack on the Conveyance or Transaction: Repossession of the Real Property

### 1. Bank's First Argument: Validity of Deed

In its Motion for Summary Judgment, the Bank argued the deed was void for lack of a grantee; thus, it still owned the real property and had the right to possession. The Bank contends it was within its rights to take possession of that realty and exclude Appellants if this could be done without a breach of the peace.

#### a. Deed to Defunct Corporation Not Necessarily Void

We agree with the Bank that in Texas a deed is void if the grantee is not in existence at the time the deed is executed. *Fisher v. Southland Royalty Co.*, 270 S.W.2d 677, 680 (Tex.Civ.App.—Eastland 1954, writ ref'd n.r.e.) (deed to heirs of living person void for uncertainty); *Vineyard v. Heard*, 167 S.W. 22, 25–26 (Tex.Civ.App.—San Antonio 1914) (deed to dead person's heirs valid if grantees can be identified, otherwise, void), *aff'd* 212 S.W. 489 (Tex.Comm'n App.1919,

holding adopted). The Bank cites a number of cases from other states which have held that a deed to a corporation which has no legal existence at the time the deed is executed is void. *Klorfine v. Cole*, 121 Or. 76, 252 P. 708, 710 (1927), *on motion for reh'g*, 121 Or. 76, 254 P. 200, 201 (1927) (deed to defunct corporation void); *In re F.H. Koretke Brass & Mfg. Co.*, 195 La. 415, 196 So. 917, 918 (1940). *Klorfine* involved a corporation which had forfeited its charter for failure to pay franchise taxes. *Klorfine*, 252 P. at 710.

■ The Bank's reliance on these cases, however, is misplaced. Forfeiture of a corporate charter does not extinguish the corporation as a legal entity so long as there is a statutory right to have the corporate charter reinstated. *McGown*, 480 S.W.2d at 50; *see Longoria v. Atlantic Gulf Enter., Inc.*, 572 S.W.2d 71, 79 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *see also Regal Constr. Co. v. Hansel*, 596 S.W.2d 150, 156 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) (acknowledging rule enunciated in *McGown*). The Church has a statutory right to reinstatement. TEX.TAX CODE ANN. § 171.313(a) (Vernon 1982). Thus, it was not wholly extinguished as a legal entity. As such, it had sufficient legal existence at the time the deed was executed to be a grantee.

We note that *Klorfine*, cited by the Bank, impliedly supports this conclusion. In reaching its decision, the Oregon Supreme Court cited a treatise stating, "When a corporation is dissolved, it is dead, and, *in the absence of a statute to the contrary*, it no longer exists for any purpose." *Klorfine*, 252 P. at 710 (emphasis ours). This is precisely what we have in the present case: a statute which permits a corporation to revive its charter after it has been forfeited for failure to pay franchise taxes. Thus, the corporation was never truly "dead".

The deed between the Bank and the Church was not void for lack of a grantee. The Church had title and the right to possession. The proper remedy was foreclosure.[5] The Bank did not carry its burden of proving it had the legal authority to enter onto the realty and take possession of the land. The Bank did not show it was entitled to judgment as a matter of law.

**b. Valid, Void, and Voidable Deeds**

■ Even if we were to hold the deed was void, we cannot agree with the Bank's assertion that because title never passed it was entitled to enter the property and take possession. We agree with the basic proposition that a deed may be valid, voidable, or void. The distinction between void and voidable deeds, however, is not whether a suit is required to set one aside, as the Bank seems to imply. In fact, we find scores of Texas cases where a suit has been necessary to set a void deed aside or otherwise litigate title and possessory rights. For example, forged deeds and deeds which fail to provide a sufficient description of the land intended to be conveyed are void. *See, e.g.* 30 Tex.Jur.3d §§ 59 and 60 (and cases cited therein). Nevertheless, suits are required to determine title and possessory rights.

■ The primary distinction we find between void and voidable deeds in Texas law is with respect to the rights of an innocent purchaser. A voidable deed operates as valid and perfect until set aside. *Pegues v. Moss*, 140 S.W.2d 461, 475 (Tex.Civ.App.—El Paso 1940, writ dism'd by agr.). Such a deed may be voidable as between grantor and grantee; it may nevertheless be effectual to convey title to an innocent purchaser from the grantee. *Link v. Page*, 72 Tex. 592, 10 S.W. 699, 701 (1889); *McCombs v. Abrams*, 28 S.W.2d 584, 592 (Tex.Civ.App.—Galveston 1930), *aff'd* 48 S.W.2d 612 (Tex.Comm'n App. 1930, holding approved). A deed which is void, however, cannot pass title even to an innocent purchaser from the grantee. *See Daniel v. Mason*, 90 Tex. 240, 38 S.W. 161, 162 (1896). We can find no case in Texas which stands for the proposition that a single party may unilaterally declare a deed void without resorting to legal suit to determine the status of the deed. Indeed, every case we find dealing with a void deed is just that:

---

**5.** The Bank could have opted to file a trespass to try title suit to declare the deed void for lack of a grantee. The drawback to this, however, is that by time the suit came to trial, the Church could easily have revived the corporation by paying the franchise taxes.

a legal suit involving the status of a deed. Thus, it is apparent that jurisdiction to determine whether or not a deed is void rests in a court of competent jurisdiction.

Furthermore, we find at least two jurisdictions which, under principles of equity, hold that a void deed is valid between the grantor and grantee, but void when asserted against third parties. *Community Credit Union Serv., Inc. v. Federal Express Serv. Corp.,* 534 A.2d 331, 334 (D.C.App.1987); *John Davis & Co. v. Cedar Glen # Four, Inc.,* 75 Wash.2d 214, 450 P.2d 166, 170 (1969). *John Davis* is particularly relevant. In *John Davis,* the Supreme Court of Washington held a deed to a corporation prior to its organization was valid between the parties, and title passed when the corporation was legally incorporated. *John Davis,* 450 P.2d at 170. There is really very little difference between a corporation not yet fully incorporated and one which has had its corporate charter revoked for failing to pay franchise taxes, and which can get that charter reinstated at any time simply by paying those taxes.

Thus, even under the scenario that the deed was void, the Bank presented no proof it had legal authority to repossess the realty. The Bank did not carry its burden of proving it was entitled to judgment as a matter of law.

### 2. Argument Two: The Church Obtained the Deed by Fraud.

In its motion for Summary Judgment, the Bank argued Appellants obtained the deed by fraudulently representing to the Bank the Lighthouse Church of Cloverleaf was a valid Texas corporation in good standing with the State Comptroller. It contends that any permission for the Church to be on the property obtained from the Bank was obtained by fraud and thus ineffective.

A deed obtained by fraud is not absolutely void. *Deaton v. Rush,* 113 Tex. 176, 252 S.W. 1025, 1031 (1923). It is voidable and must be set aside in a judicial proceeding. *Id.* A voidable deed operates as valid and perfect until set aside. *Pegues,* 140 S.W.2d at 475. "Permission" to be on the property is irrelevant where a voidable deed is concerned because the grantee has title and the right to possession until a court sets that title aside. Thus, the Bank did not carry its burden of proving it was entitled to summary judgment as a matter of law on this theory.

### 3. Argument Three: The Security Agreement and Deed of Trust Authorized the Bank to Enter and Repossess the Real Property.

The third theory advanced by the Bank in its Motion for Summary Judgment was that it did not commit a trespass against Appellants because (1) the Texas Business and Commerce Code grants a secured party the right to repossess collateral upon default of the debtor, and (2) the security agreement specifically afforded the Bank the right to take possession of any collateral and to enter the premises where the collateral is located if such entry could be done without a breach of the peace.

The Bank relied on section 9.503 of the Texas Business and Commerce Code, generally known as the Texas Uniform Commercial Code. That section states, "[u]nless otherwise agreed a secured party has on default the right to take possession of the collateral." TEX.BUS. & COM.CODE ANN. § 9.503 (Tex. UCC) (Vernon 1991). It goes on to provide that a secured party is entitled to take possession without judicial process if it can do so without a breach of the peace.

"Repossession" of real estate cannot be compared to repossession of personal property. Repossession of personal property is governed by Chapter 9 of the Texas Uniform Commercial Code. TEX.BUS. & COM. CODE ANN. § 9.101 et seq. (Tex.UCC) (Vernon 1991). Chapter 9 specifically creates the right to self-help repossession. TEX.BUS. & COM.CODE ANN. § 9.503 (Tex.UCC) (Vernon 1991). Real estate is specifically excluded from the scope of that chapter. TEX.BUS. & COM.CODE ANN. § 9.104(10) (Tex. UCC) (Vernon 1991). Thus, Chapter 9 does not give creditors a right to repossess real estate in the same way they repossess personal property.

The Texas Property Code provides its own specific guidelines for adjudicating title interests and possessory rights in real estate. Chapter 22 of the Code governs trespass to try title suits. TEX.PROP.CODE ANN. § 22.001 et seq. (Vernon 1984). These suits are used to determine "title to lands, tenements, or other real property." TEX.PROP.CODE ANN. § 22.001(a) (Vernon 1984). Chapter 24 governs forcible entry and detainer actions. TEX.PROP.CODE ANN. § 24.001 et seq. (Vernon 1984). A forcible entry and detainer action provides a summary method for determining the right of a party to the possession of real property. *See Haginas v. Malbis Memorial Found.*, 163 Tex. 274, 354 S.W.2d 368, 371 (1962). Chapter 23 deals with actions to partition ownership of land, and Chapter 21 governs eminent domain actions. TEX.PROP. CODE ANN. § 23.001 et seq. (Vernon 1984); TEX.PROP.CODE ANN. § 21.001 et seq. (Vernon 1984). In other words, the Property Code provides very specific guidelines for resolving disputes regarding title or possessory rights, and those guidelines should not be departed from.

▮▮▮▮▮ There is no remedy in the Property Code which corresponds to § 9.503 of the Texas U.C.C. and which allows a party to "repossess" real estate. The nearest equivalent is a deed of trust which allows for a non-judicial foreclosure. The manner in which a non-judicial foreclosure is conducted is strictly governed by the Property Code. *See* TEX. PROP.CODE ANN. § 51.002 (Vernon Supp. 1994). Foreclosure transfers title from the debtor to another party, but it does not put the new owner in possession; it gives him a right to possession. If a debtor remains on the property, most deeds of trust treat him as a tenant by sufferance. To remove a tenant by sufferance, the new owner must file a forcible detainer suit.

▮▮▮▮▮ It is our conclusion that Texas law does not condone seizure of real property prior to foreclosure unless voluntarily relinquished by the debtor. In other words, Texas does not recognize "self-help repossession" of real estate. The Texas Property Code instead provides an orderly means for resolving disputes.

Even if Texas recognized a contractual right to "self-help repossession" of real property, we find the Security Agreement in this case contained no such authorization. The Security Agreement authorized the Bank to go onto the Church's real property to take possession of personal property pledged as collateral if this could be done without a breach of the peace. The agreement, by its own terms, did not cover the actual real property. The Deed of Trust likewise contains no clause authorizing the Bank to take possession of the mortgaged property. The Deed of Trust provides:

> If any of the property is sold under this deed of trust, Grantor [the Church] shall immediately surrender possession to the purchaser. If the Grantor fails to do so, *Grantor shall become a tenant at sufferance of the purchaser, subject to an action for forcible detainer* (emphasis added).

The only remedy afforded the Bank in the Deed of Trust is the nonjudicial foreclosure it bargained for. Under the terms of the Deed of Trust, if the Church failed to vacate the property after the foreclosure sale took place, the Bank's remedy was a lawsuit. Thus, the summary judgment evidence conclusively demonstrated the opposite of what the Bank claims it had a right to do: the Bank was *not permitted to enter and "repossess"* the real property under the loan documents. The Bank did not prove it was entitled to judgment as a matter of law on this legal theory.

### C. Attack on the Conveyance or Transaction: Conversion of Personal Property

▮▮▮▮▮ In its Motion for Summary Judgment, the Bank argued the Businesses cannot sustain a cause of action for conversion. The Bank advanced two reasons why it was entitled to judgment as a matter of law. First, it theorized there was no evidence in the record that entities other than the defunct corporation owned personal property at the location. Although the Security Agreement gave the Bank the right to seize ". . . All improvements including—Furniture and fixtures . . ." located on the real property, the agreement is insufficient to establish as a matter of law that all personal property at

that location was owned by the defunct corporation. For example, while the Church may have owned the altar, pulpit, and pews, it does not follow that it likewise owned the desks, blackboards, and books used to teach at the school. The agreement is only evidence that the defunct corporation agreed the Bank could repossess certain items given as collateral for the loan.

Second, the Bank argues the Security Agreement granted it the right to enter the real property for the purposes of repossessing personal property so long as the entry can be done without a breach of the peace. This is a classic "self-help" repossession provision commonly found in security agreements covering personal property. The undisputed facts show the Bank entered the real property and excluded Appellants from that property. We have already determined, under the facts presented, this action, although without force, was without legal authority. Thus, it constituted a breach of the peace. The Bank did not demonstrate it was entitled to judgment as a matter of law on the issue of conversion of the personal property.

### D. Wrongful Foreclosure

We do not address appellants' wrongful foreclosure claim because it was not properly assigned as a point of error.

### V. *Disposition*

We sustain points of error one through twenty-three as regards The Lighthouse Church of Cloverleaf, a Texas Corporation, and David H. Montgomery, individually and d/b/a The Lighthouse Church of Cloverleaf, Cornerstone Christian Academy, and Carzz's Auto Sales. This holding applies only to the claims for trespass and conversion. We overrule points of error one through twenty-three as regards these same Appellants only so far as they pertain to the claim of wrongful foreclosure.

On its motion for rehearing, the Bank argues this Court's judgment effectively grants summary judgment in favor of Appellants. They point out that no such motion appears in the transcript. We have taken care, however, to demonstrate why Texas law does not direct judgment in favor of the Bank on the facts shown in its Motion for Summary Judgment. Nothing in our judgment today directs the district court to enter a judgment in favor of Appellants, or otherwise grant them relief, except to reverse and remand the earlier summary judgment rendered in favor of the Bank by the district court.

We affirm in part, reverse in part, and remand.

ROBERTSON, J., concurs in the judgment.